Case:1:18-cv-01699-JEB
RRN 70T811300000124451516
EE 406 122 051 US

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA [Washington, D.C.]

**Case:** 1:18-cv-01699-JEB

Galiquogi' Dinah Deas Cadoche f/k/a Bridgette Chapman,

Aborigine American Indian, duly elected Chief

Of Gvhnage-Ama Uwey Autochthon Peoples

of Sha'Kori Udotlvsv (Nation)

[115-18] 203rd Street, Near Saint Albans Territory,

State of New York Republic 18 U.S.C. 1151

eMail: ShaKoriUdotlvsvLaw@Gmail.com

Phone:1.516.670.2972







**Amended**
**ALIEN TORT COMPLAINT**
**Jury Trial of "Status" Peers**
**Demanded**

RE: Repatriation of Tribal Restricted Lands and Property known as Sha'Kori Udotlvsv Tribal Lands [875] Shubert Street, Near Baldwin Territory, New York Republic, 18 U.S.C. 1151

Plaintiff In Propria Persona,

In Full Life



Case:1:18-cv-01699-JEB
RRN 70181130000124451516

EE 406 122 05 05

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA [Washington D.C.]

**Case: 1:18-cv-01699-JEB**



Galiquogi Dinah Deas Cadoche, f/k/a Bridgette Chapman,

American Indian, duly elected Chief Minko of the Gvhnage-Ama

Uweyv Autochthon Peoples of the ShaKori Udotlvsv (Nation)

[115-18] 203rd Street, Near Saint Albans Territory,

State of New York Republic 18 USC 1151

+1.516.670.2972



                Plaintiff,

vs.

THE BANK OF NEW YORK MELLON FKA

THE BANK OF NEW YORK AS TRUSTEES

FOR CERTIFICATE HOLDERS OF THE

CWABS INC., ASSET-BACKED CERTIFICATES,

SERIES 2006-7, ET AL., AND ALL OTHERS

101 Barclay St., New York, NY 10286 and/or

225 Liberty St., New York, NY 10286;

                Defendants

**Amended
ALIEN TORT COMPLAINT
Jury Trial of "Status" Peers Demanded**



## VERIFIED AMENDED COMPLAINT

Plaintiff, in Propria Persona, in full life, Galiquogi Dinah Deas Cadoche f/k/a Bridgette Chapman, citizen and duly elected Chief Minko of Gvhnage-Ama Uweyv Autochthon Peoples of Sha'Kori Udotlvsv (Nation), (herein after referred to as the ("Plaintiff") brings this Amended Alien Tort Claim,[1] RR# ~~70181130000124451516~~ EE 406 122 051 US, before the United States District Court for the District of Columbia under Article III Jurisdiction, in the spirit of peace and humility; as per Honorable Judge James E. Boasberg's Minute Order dated, November 7, 2018, citing Plaintiff's original 124-page [Tort] Complaint violates Fed. R. Civ. P. 8 (a)(1)[2] and if she wishes to proceed, she shall file an Amended Complaint that does not exceed 40 pages by November 28, 2018; seeking remedy, alleging as follows: Environmental and Systematic Racism, Trespass and Human Rights Violation-Degradation, rooted in the abolishment of Plaintiff's Aborigine Restricted Lands (airspace and Property Titles, as so established in original Alien Tort Complaint. Noting, Amended Alien Tort [Complaint] is not intended to supersede, omit, and/or change original Alien Tort [Complaint] filed July 16, 2018. Rather, to be in compliance with Judge James E. Boasberg's order, *not to exceed 40-pages*. Accordingly, Plaintiff, not being learned in law/legalese humbly requests the UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA to relax the standards

**Plaintiff is demanding a jury trial of equal "status" peers.**

********************LEFT BLANK********************

---

[1] Amendment complaint is a revision of the original complaint, previously filed by plaintiff. Defendants are in violation of their own governmental laws 28 U.S.C. § 1350.

[2] Rule 8. General Rules of Pleading (a) Claim For Relief. A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdictions, unless the court already has jurisdiction and the claim needs no new jurisdiction support.

Case:1:18-cv-01699-JEB
RRN 7018113000012445156
EE 406 122 051 v )

## I. Jurisdiction

97  *"Indian Nations had always been considered as distinct, independent political communities,*
98  *retaining their original natural rights, as the undisputed possessors of the soil from time*
99  *immemorial (Supreme Court Chief Justice John Marshall)!"*

100  The jurisdiction of the Court is invoked pursuant to Jus Cogens breach of a peremptory
101  norm of international law, See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S.
102  252, 264–68 (1977). Cf. RECHTSCHAFFEN & GAUNA, supra note 75, at 49–53 (discussing
103  racism as a cause of environmental justice problems) and where Petitioner has protected status of
104  the victim and is a member of a discrete and insular minority, United States v. Carolene Products
105  Co., 304 U.S. 144, 153 n.4 (1938). See also Edward J. Erler, Equal Protection and Personal
106  Rights: The Regime of the "Discrete and Insular Minority," 16 GA. L. REV. 407 (1982), See,
107  e.g., Soc. and Econ. Rights Action Ctr. for Econ. and Soc. Rights v. Nigeria, Communication No.
108  155/96, African Commission on Human and Peoples' Rights (2001), at paras. 44–48 (explaining
109  that Nigeria has an obligation to refrain from interfering with rights; to ensure that others respect
110  rights, and to fulfill its obligations under human rights regimes to protect rights and freedoms).
111  Relief may be awarded pursuant to Law of Nations;
112  This Court has venue of this action because the subject matter claims of (A)
113  environmental deprivations of human rights, (B) particularly vulnerable racial communities, (C)
114  procedural environmental rights violations, (D) diversity of citizenship;
115  Plaintiff is an enrolled tribal member of the GVHNAGE AMA UWEYV tribe, et al., is
116  principle chief, and the principle place of operations is Nassau County, New York, and
117  DEFENDANTS are business operators, operating a commercial banking institution in New
118  York; additional DEFENDANTS and Status, as established in Original Alien Tort (pp

Case:1:18-cv-01699-JEB
RRN 70181130000124451516
EE 406  122  051  v)

119 26,32,39,45,53,58,64,66,68-73,77-78), are corporations and/or persons doing business as
120 government entities and/or representatives, thereof, in New York, county of Nassau, and (E)
121 Plaintiff's foreign aborigine status claims falls within the venue of the District Court of the
122 United States, District of Columbia [Washington, D.C.], Comm. on Econ., Soc., and Cultural
123 Rights, *General Comment No. 20*, ¶ 2, U.N. Doc. E/C.12/GC/20 (July 2, 2009) ("Non-
124 discrimination and equality are fundamental components of international human rights law.");
125 Declaration on Race and Racial Prejudice, U.N. Educational, Scientific and Cultural
126 Organization (UNESCO), 20th Sess., gen. conf., U.N. Doc E/CN.4/Sub.2/1982/2/Add.1, annex
127 V (Oct. 17, 1982) [hereinafter UNESCO Declaration on Race]; Int'l Law Comm'n,
128 *Fragmentation of International Law: Difficulties Arising from the Diversification and Expansion*
129 *of International Law*, *33, U.N. Doc. A/CN.4/L.702 (July 18, 2006); Juridical Condition and
130 Rights of the Undocumented Migrants, Advisory Opinion OC-18/03, Inter-Am. Ct. H.R. (ser. A)
131 No. 18, ¶ 1 (Sep. 27, 2003) (Pesantes, J., concurring) ("[E]quality and nondiscrimination are
132 rights that form a platform on which others are erected"). Plaintiff's claims for relief also arise
133 under the Supremacy Clause of the United States Constitution, Indian Commerce Clause;
134     Plaintiff also makes claim under Federal and State common law and violation the Indian
135 Trade and Intercourse Act, 25 U.S.C.A. § 177 (the "Nonintercourse Act"), and that the purported
136 claims which allowed the fraudulently absconding of subject restricted lands (airspace and below
137 ground) and property by the Defendants as described herein and established forthwith original
138 Alien Tort filed July, 16, 2018, is without valid proof of title, valid Original Note, or ownership
139 rights superior to claims as this, which fall under the protections of 18 U.S.C. 1151. The CERD
140 reinforced this holding in 2005, finding that New Zealand discriminated against Indigenous

Case:1:18-cv-01699-JEB
RRN 2018113000001244S1516
FE 406 /82 - 051 V5

141  Peoples by extinguishing the possibility of establishing customary titles, and failing to guarantee

142  a right of redress for that wrong;

143  Plaintiff asserts Defendants' claim and U.S. Congressional ruling to extinguish aboriginal

144  title is systematic discrimination and resulting from acts of environmental racism. The CERD

145  also influenced the ruling in *Mabo v. Queensland II*, when the high court struck down the

146  doctrine of *terra nullius*, upon which, British claims to acquisition of Australia were based; the

147  *Mabo* cases have informed a number of other national high courts around the world, leading

148  them to recognize the validity of native title and adding to the level of acceptance of the

149  prohibition of environmental racism; Plaintiff's restricted lands (airspace and below ground) and

150  property and procedural rights suffer inequitably from careless non-compliant actions of

151  discriminatory interference committed by the Bank of New York, Defendants, et al., and all

152  others, systemically;

153

154  **(EXPLANATION OF ARTICLE III)**

155  NEW YORK DISTRICT COURTS LACK ARTICLE III JURISDICTION

156  In "CHAPTER 5—DISTRICT COURTS" and ends with the paragraph below:

157  "HISTORICAL AND REVISION NOTES." If you were not sent pages 42 and 43 of Title 28

158  U.S.C., or if you have trouble reading or printing out these pages, you can also access Title 28

159  U.S.C. by going to https://law.justia.com/codes/us/2011/title-28/part-i/chapter-5 . The Court is

160  invited to go there and read first §91 and then examine every other district court to find one

161  ordained and established under Article III;

162  The federal trial courts are universally, but erroneously thought to include all the territory

163  in the counties that comprise districts and divisions of the United States district courts. This

164 perception of the federal trial courts is the result of the quick read encouraged by those who
165 favor a strong, large, and powerful federal government. Congress, on pages 42 and 43, must state
166 in its curiously cryptic way that the territorial composition of the district courts is only the
167 federal territory subject to the exclusive legislative power of Congress because that is true. The
168 statute law that establishes the federal district courts in the several states must confirm that the
169 territorial composition of the district consists only of federal territory or Title 28 U.S.C. and
170 could not have been enacted into positive law

171    Alaska and Hawaii are, today, states of the Union, but were territories on January 1,
172 1945. Washington D. C. is neither a territory nor a state, but is the product of "Cession of
173 particular States, and the Acceptance of Congress" as the seat of government. Although it is
174 treated like a state, it is the "District" subject to the exclusive Legislation of Congress, pursuant
175 to Article I, Section 8, Clause 17. Puerto Rico is today, and was on January 1, 1945, a possession
176 of the United States and definitely not a state of the Union. The correct answer to the question
177 "What is the "territorial composition" of the districts and divisions by counties as of January 1,
178 1945?" is pursuant to Article I, Section 8, Clause 17, "all Places purchased by the consent of the
179 Legislature of the State in which the same shall be."

180    Based on no evidence at all, concerning the United States district court in Puerto Rico,
181 the entire American legal community is convinced that the federal trial courts in the several
182 states exercise Article III judicial power everywhere within those states. In one instance where
183 Congress appeared to ordain and establish an Article III United States district court in every
184 state; in 1959, Congress created an Article III United States district court for Hawaii, but made
185 no provision for Article III judges, by specifically precluding the President from appointing
186 them. The Code specifically provides for territorial judges for the Hawaiian Article III court.

Case:1:18-cv-01699-JEB
RRN 70181130000124451516
EE 406 122 051 US

187  Title 28 U.S.C.—Judiciary and Judicial Procedure has been enacted into positive law so the
188  Code shows the same kinds of courts as are found in the statutes. Chapter 5 of Title 28 U.S.C.—
189  District Courts consist of Sections 81 through 144. The names of all 50 states of the Union will
190  be found from Sections 81 to 131 and in addition in Section 88 will be found the District of
191  Columbia and in Section 119 Puerto Rico.

192         An example of fact: Title 28 U.S.C. is territorial law. This fact will be supported by
193  material found in the notes to §91. Those in federal litigation, or who are contemplating that
194  exercise, should be aware that legal justice is available only from courts that have judicial power.
195  Any litigant in any United States district court in any state of the Union is warned that these
196  courts have no Article III, Section 2 judicial power, whatsoever. The United States district courts
197  of the several states are not judicial courts and the judges that sit in those courts are not Article
198  III judges. Judges of these courts are appointed for life terms, but they obtain judicial powers
199  only when appointed to judicial courts with Article III power. The court is the equivalent of an
200  office. An office has power because the officer that occupies that office has duties to exercise in
201  that office. District courts and district court judges of the United States have been mistaken for
202  Article III courts and judges since the Judiciary Act of 1789. The mistaken belief that a court has
203  jurisdiction is sufficient to confer it when everyone is equally mistaken, but that jurisdiction
204  remains what it is and not what it is mistaken to be.

205         The names of the federal trial courts in the several states are labels and are fully
206  explained in the first sentence of the "Historical and Revision Notes" that are part of the law:
207  "Sections 81—131 of this chapter show the territorial composition of districts and divisions by
208  counties as of January 1, 1945." The subject matter of Chapter 5 of Title 28 U.S.C. is the
209  territorial composition of districts and divisions by counties as of January 1, 1945 of the courts

210  named in Sections 81—131, which can only be the areas subject to the exclusive jurisdiction of
211  the United States—federal territory. These areas consist of places like the National Parks,
212  military bases, federal buildings, and federal courthouses. Crimes that occur on or in these
213  federal places are federal crimes, and the federal courts for the district are the proper forum for
214  trials of those crimes. Article III judicial power is not needed for those courts, and those courts
215  are certainly without such power. There is no room for legalistic interpretations of Chapter 5.

216  On January 1, 1945, the judicial districts of United States district courts had only one
217  thing in common—those judicial districts consisted of federal territory and some admiralty
218  jurisdiction for some coastal courts. Those common characteristic have not changed since then,
219  and even if they had, the January 1, 1945 date was to be used to reckon the federal territories
220  existing on a given date. The January 1, 1945 date is critical to understanding the United States
221  district courts territorial jurisdiction as consisting of federal territory as of a time in a span of
222  time. The first day of 1945 forces the mind to focus on that which can change within
223  geographical boundaries—federal territory, which can be increased by purchase and consent of
224  the Legislature of the State.

225  The only legislation, since the first judiciary act on September 24, 1789, to create an
226  Article III United States district court is found in §91 of Title 28 U.S.C. That section documents
227  the change of a territorial court to an Article III court without actually giving the court Article III
228  judicial power. Nothing can be done to change the nature of these courts in the several states
229  without the direct intervention of Congress by legislation. A judge without judicial power can do
230  nothing to change the jurisdiction of the court where he presides. Any litigant or Petitioner in any
231  federal court proceeding who attempts to have the United States district court consider the issues
232  raised in this letter should be aware that the American Law Institute's Restatement of Judgments

Case:1:18-cv-01699-JEB
RRN 7018113000012445516
EE 406 122 051 US

233 holds that such a litigant is bound by the court's ruling. A federal judge sitting in a trial court in
234 any United States district court is without judicial power. While such an official can be a life-
235 tenured bureaucrat, such an official cannot be expected to rule other than administratively.

236
237 **UNITED STATES DISTRICT COURT IS A TERRITORIAL COURT UNDER COLOR OF LAW**
238 No United States district court in any state may lawfully exercise Article III court power.
239 The lawful jurisdiction of the federal district court or courts is limited to those places where
240 Congress has exclusive jurisdiction. It is also clear that federal judges and federal courts have
241 been used in the past by the federal government to control those persons opposed to the
242 usurpation of power by the national government. The federal courts known as United States
243 District Courts are federal and territorial in that these courts implement administrative law on
244 territory exclusively under the jurisdiction of the United States of America.

245 United States district courts are being used by Congress primarily to prevent the rendition
246 of law and equity in national courts by masquerading as Article III courts. These courts are
247 incapable of achieving justice because they are not Article III courts. Generally speaking, we
248 have a federal government that consists of a Congress of the United States, a President of the
249 United States and district courts of the United States, **_because there is one in Hawaii and one is_**
250 **_Washington D. C_**.; The true nature of the government of the United States of America is
251 libertarian. Very few of the "Posterity of the People" that ordained and established the
252 Constitution are aware that the loose confederation of state governments that became the United
253 States of America is a true libertarian government;

254 The purpose of the Constitution was to establish and limit government to the purposes for
255 which it was established. Unfortunately, the Congress has very effectively used the mechanisms

256   in the Constitution to limit the third branch of the national government to the people's detriment.
257   Congress has intentionally failed or refused to provide Article III courts in the several states. The
258   present intent of the federal government is to subject citizens of the several states to its
259   administration. Most, if not all people who find themselves, in a federal court, are not aware that
260   court has no Article III judicial power;

261   Individuals appointed to United States district courts are permitted to believe that they are
262   Article III judges because they are appointed for life. These individuals are actually urged by the
263   other two branches of federal government to act like Article III judges. Article III judicial power
264   imposes self-restraint on judges. Only judges appointed to Article III courts may exercise the
265   judicial power of the United States found in Article III, Section 2. Judicial power imposes
266   restraints on the judges that have it and that serves as some protection from judicial abuse. All
267   justices appointed to the Supreme Court of the United States are genuine Article III judges, and
268   the ATS is established under Article III jurisdiction, therefore Jus Cogens claims can only be
269   heard by an Article III Court

270   The rigidity of the non-judicial court is the result of the tight rein that the Congress
271   maintains over the personnel and business of non-Article III courts to solely achieve
272   congressional purposes. Galiquogi Dinah Deas Cadoche, an American aborigine chooses this
273   venue of Article III. The Constitution is a limitation on Congress. The Constitution grants to
274   Congress power to create courts by exercising three different powers. At various times in the
275   history of this country Congress has created courts using these various powers under Article I,
276   Article III, and Article IV of the Constitution:

277   1. The Congress shall have power… To constitute Tribunals inferior to the Supreme Court;

278      2. The judicial power of the United States shall be vested in one Supreme Court and such
279         inferior Courts as the Congress may from time to time ordain and establish;
280      3. The Congress shall have Power to dispose of and make all needful Rules and Regulations
281         respecting the Territory or other Property belonging to the United States;

282         There should be no confusion as to the difference between Article III courts and those
283 courts that are not Article III courts. Article III district courts are not territorially different from
284 the tribunals inferior to the Supreme Court that Congress may constitute pursuant to Article I
285 Federal courts do not extend their judicial districts beyond federal territory. <u>Article III courts are
286 "territorial courts" that may exercise the judicial power of the United States</u>—Article I and IV
287 courts have no such power

288         Congress has established Article III district courts in Hawaii and the District of
289 Columbia. The 2 district courts of the United States that were ultimately pronounced ordained
290 and established by Congress pursuant to Article III of the Constitution are the only ones that can
291 exercise the judicial power of the national government, which employs the Congressionally
292 mandated Alien Tort Statute and Law of Nations, Jus Cogens claims;

293         Because of Article 4-Congress can make law locally or nationally, and it must be
294 presumed that law enacted by Congress is territorial in scope rather than national, *Foley Bros.*
295 *Inc. v. Filardo 336 U.S. 281(1949)*, unless a contrary intent is shown in the legislation itself, the
296 legislation creating the district court for Hawaii is a clear example of the presumption and an
297 example of a national legislative intent to create an Article III court;

298         Congress has provided that territorial Title 28 U.S.C. judges are appointed to the United
299 States district court for the district of Hawaii, and are to be appointed to an Article III court. The

300   district judges for the district of Hawaii are specifically to be appointed by the President pursuant

301   to sections 133 and 134 of title 28, United States Code, as officers of the United States but not as

302   judges of an Article III court. These two sections are also to be used in appointing any of 7

303   judges of the Puerto Rico district should a vacancy occur there. It can be deduced that

304   appointment pursuant to § 133 and 134 of Title 28, will always produce territorial judges

305        The Hawaii judicial district established in § 91 of the Judicial Code of 1948 was a

306   territorial court. Section 9 (a) above clearly indicates that prior to the admission to statehood, the

307   United States District Court of Hawaii was not a true United States court established under

308   Article III of the Constitution to administer the judicial power of the United States, Balzac *v.*

309   *Porto Rico, 258 U.S. 298, 312 (1922)*. In *Balzac*, Chief Justice William Howard Taft stated that

310   United States District Court for Arecibo, Porto Rico, as Puerto Rico was known then, "created by

311   virtue of the sovereign congressional faculty, granted under Article IV, § 3, of that instrument, of

312   making all needful rules and regulations respecting the territory belonging to the United States"

313        Puerto Rico is the Commonwealth of Puerto Rico and it has not been incorporated into

314   the United States though its inhabitants are United States citizens. The inclusion of Puerto Rico

315   in Chapter 5 as § 119 does not make the district court for Puerto Rico an Article III court because

316   Puerto Rico has not been incorporated into the Union. Puerto Rico fits comfortably among the

317   names of the 50 states because the geographical areas are mini federal territories or federal

318   enclaves

319        <u>Only Hawaii has an Article III district court and that court cannot function as one. No

320   other state has an Article III court</u>. The federal district courts of Rhode Island fall squarely within

321   the mold of the federal courts of the 49 states that have no Article III district courts. Examination

344 Alien Tort Statute, Environmental Racism jurisdictional claims. The proper venue for addressing
345 Plaintiff's claims is in the District Court of the United States, in the "District of Columbia".

346 Plaintiff makes claim of Defendants' violations of the International Covenant on
347 Economic, Social and Cultural Rights (ICESCR) and the Universal Declaration of Human Rights
348 (UDHR)

349 Plaintiff claims against Defendants for trespass, denial of right to property, official
350 oppression and fraud; unlawful liens and encroachment on tribal property and lands; Plaintiff is
351 denied the free unencumbered right to use lands and property for tribal commerce and
352 ceremonial affairs, and cultural gatherings in violation of Plaintiff's rights to own, develop, and
353 use traditional lands and resources; Plaintiff has suffered insurmountable human rights violations
354 as a consequence of land rights violations and environmental degradation, which are inseparable
355 from the tactics now employed by Defendants under the color of a legal banking transaction; as
356 well, color of the law-conspired by corporate government agencies and/or their representatives.
357 Plaintiff is demanding that the Bank of New York provide proof that it owns said property (See
358 Alien Tort filed July 16, 2018, Prayer of Relief, pp 110-120)
359

360 **I. Parties**
361 *PLAINTIFF*
362 *Comes now Plaintiff*, Sui Juris, Galiquogi Dinah Deas Cadoche, of the GVHNAGE-AMA
363 UWEYV tribe, et al., being competent to state matters included in this Alien Tort Complaint,
364 having knowledge of the facts, and declaring to the best of Plaintiff's knowledge, the statements
365 made in this affidavit are true, correct, and not misleading

322  of copies of all the Statute Laws described in the annotations to all the Chapter 5 sections of Title
323  28 that establish district courts in the states and Hawaii reveals that Hawaii has the only Article
324  III district court. Citizens have a duty to discover the true authority of those claim government
325  power.

326   The use of the term, "district courts of the United States" refers to Article III courts.
327  There are no more than two "district courts of the United States." There is no doubt that the
328  district court for Hawaii is an Article III court—that's one. The § 88 court for the District of
329  Columbia is another. The Historical and Revision Notes to that section makes it clear that the
330  District of Columbia district court is a constitutional court established and ordained under Article
331  III. The existence of at least two "district courts of the United States" permits the general usage
332  of language that refers to the "district courts of the United States" as Article III courts

333   The United States Supreme Court in two cases: Balzac v. Porto Rico, 258 U.S. 298
334  (1921) and Mookini v. United States, 303 U.S. 201 (1938) made it clear that a *"district court of*
335  *the United States" described a court created under Article III* and a *"United States district*
336  *court" described a territorial court*. The former identified a constitutional court of the United
337  States exercising the judicial power of the United States and the latter merely identified a court
338  for a district of the government of the United States

339

### CONCLUSION

341   The United States district courts are territorial and without judicial power. This has been
342  so since the Judiciary Act of 1789. As such, the United states District Court for the District of
343  New York or any other state, lacks the jurisdiction to properly address Plaintiff's Article III,

Case:1:18-cv-01699-JEB
RRN 701811300001244515l6
EF 406 122 051 05

366 WHEREAS, Gvhnage Ama Uweyv Autochthon Peoples of Sha'Kori Udotlvsv (the
367 "Gvhnage-Ama Uweyv Tribe" et al.), is a sovereign and body politic, attached to the Treaty of
368 Camp Holmes–recognized and protected under the Foreign Sovereign Immunities Act (FSIA),
369 within the borders of the United States of America; being the sole rightful, title holder, and
370 owner of all related Aboriginal Land Titles and Deeds pertaining restricted lands (airspace and
371 below) and property known as [875] Shubert Street, Near Baldwin Territory, New York State
372 Republic, Indian Territory, 18 U.S.C. 1151; Galiquogi Dinah Deas Cadoche f/k/a Bridgette
373 Chapman (the "Plaintiff"), is a full-blooded Aborigine American Indian and natural citizen of
374 Gvhnage-Ama Uweyv Autochthon Peoples of Sha'Kori Udotlvsv (Nation) duly elected Chief
375 Minko and Trust Authority, who, in 2014, deeded the restricted lands (airspace and below) and
376 property to the Tribe; having dual Foreign National citizenship as a non-resident inhabitant of,
377 said tribal restricted lands (airspace and below) and property; individually the heir of the "Deed"
378 as a Foreign National whose lands, culture, religious beliefs, and heritage have been taken and
379 dispossessed of unlawfully under the State of New York; in direct dissent of the Constitution of
380 New York 1777, Article XXXVI and Article XXXVII; as well, the Non-Intercourse Act (1809),
381 22 U.S.C. §177, et al and Federal Indian Trust Responsibility[3];

382 "When any court violates the clean and unambiguous language of the Constitution, a fraud is
383 perpetrated and no one is bound to obey it, et al.,"[4] as established in Alien Tort submitted to
384 Court on July 16, 2018 (pp 21-26)

385 ************LEFT BLANK*************

386

---

[3] Doctrine of Trust Responsibility: The federal Indian trust responsibility is a legal obligation under whih theUnited States "has charged itself with moral obligations of the highest responsibility and trust" toward Indian tribes (Seminiole Nation v United States, 1942). Retrieved from Bureau of Indian Affairs (.gov)
[4] Defendants are in violation of their own governmental laws State v. Sutton 63 Minn 167, 65 NW 262, 30 LRA 630

Case:1:18-cv-01699-JEB
RRN 70181130000124451516
EE 406 122 051 US

387  *DEFENDANTS*

388  Plaintiff repeats and re-alleges the forgoing paragraphs as it is fully set forth and referenced in
389  Alien Tort Complaint filed July 16, 2018.  Upon information and belief; DEFENDANTS:
390  Corporation, Government Entities, and Representatives, thereof, lacked lawful standing
391  (jurisdiction) to cause Plaintiff's alienation from tribal restricted lands (airspace and below) and
392  property;

393

394                                    **II. Nature of the Action**

395  *The question remains before the Court, as stated in Alien Tort filed July 16, 2018 (p7); having its*
396  *foundation in judicial jurisdiction: personal, territorial, subject matter, pertaining the Aborigine*
397  *American Indian; being foreign national citizens of a sovereign and body politic known as an*
398  *Aborigine American Indian Tribe, inhabitants within the borders of the United States; having*
399  *their unalienable rights given them by the CREATOR to hold Aborigine Land and Property Titles*
400  *to the lands and property bestowed upon Aborigines by said CREATOR void of alienation of said*
401  *property by  U.S. governmental agencies and other Corporate entities-Indian Nations and the*
402  *United States government having  sovereign-to-sovereign relation established by treaties,*
403  *agreements acts of Congress, and court decisions; being protected under International treaties*
404  *and laws.*

405          Plaintiff owns original title to restricted lands (airspace and below) and property listed at
406  "Longitude 41.177971 Latitude 73.142608, SECTION 36, BLOCK 451, LOT 519, also
407  described as [875] Shubert Street, near North Baldwin, New York Republic, 18U.S.C. 1151. The
408  property was originally purchased by Plaintiffs Bridgette Chapman and Michael Chapman, and
409  in following cultural tradition the restricted lands (airspace and below) and property was

Case:1:18-cv-01699-JEB
RRN 7018113000012445156
EF 406 122 051 US

410  transferred to the GVHNAGE AMA UWEYV tribe, et al., and has remained in GVHNAGE
411  AMA UWEYV tribe, et al., ownership for more than three years;
412         On or about July 25, 2017, Plaintiffs received notice that claims were filed by the Bank of
413  New York Mellon, DEFENDANTS, to begin a process of liens; ultimately, taking private lands
414  and property of the Plaintiff, selling Plaintiff's said restricted lands (airspace and below) and
415  property without authority or right to the restricted lands (airspace and below) and property at
416  issue. DEFENDANTS have instituted claims which have and are violating international law and
417  the Constitution for the United States of America, which protects the rights of *Indians* in
418  America;
419         Plaintiff has tried to complain and file the required protections for Plaintiff's tribal
420  restricted lands (airspace and below) and property, but the state of New York has repeatedly
421  refused to provide services which respect and provide diversity options for American Aborigine
422  people in the state, as required by federal law. For more three years, Plaintiff's complaints have
423  been ignored and Plaintiff seeks remedy with the Article III court for relief. Plaintiff seeks
424  Article III relief due to the fact that the legislative federal court of New York is influenced by the
425  legislative body of that state and the District Court of the United States is not influenced or
426  obligated to that legislative arena. Plaintiff is a foreign national and demands Article III
427  constitutional protection against deprivation and theft of tribal restricted lands (airspace and
428  below) and property;

429          ************INTENTIONALLY LEFT BLANK************

430

431

## REMEDY

Plaintiff seeks, states, and reiterates remedy sought as cited in Alien Tort Complaint filed July 16, 2018, pp 102-104: immediate repatriation of tribal restricted lands and property, appropriate reparations and an injunction against DEFENDANTS to cease and desist all future actions against Plaintiff, return of clean title, et al;

WHEREFORE, as stated in Alien Tort submitted, July 2018, Plaintiff demands judgment against all DEFENDANTS for injunctive relief and actual, special, compensatory damages, attorneys' fees and costs of the litigation, et al; as per request in Alien Tort Complaint filed July 16, 2018. ALL EXHIBITS, THEREOF, ARE ADOPTED IN AMENDED COMPLAINT

Plaintiff,
In Propria Persona
In Full Life



_____
Galiquogi Cadoche, Chief Minko f/k/a Bridgette Chapman
*Gvhnage-Ama Uweyv Autochthon Peoples of the ShaKori Udotlvsv (Nation)*

